The Honorable Barbara J. Rothstein

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

STATE OF WASHINGTON,

                    Plaintiff,

    v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, *et al.*,

                    Defendants.

No. 2:25-cv-01401-BJR

## DEFENDANTS' REPLY IN SUPPORT OF
## THEIR CROSS MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 3

    I.    The Court Lacks Jurisdiction Over All Washington's Claims. ........................................ 3

    II.   Washington's Claims Fail on the Merits. ..................................................................... 8

        A.  Washington's APA Claims Fail as a Matter of Law. ....................................... 8

        B.  Defendants' Termination of Grants Was Not *Ultra Vires*. ........................... 12

        C.  Defendants Did Not Violate the Constitution by Terminating SSP Grants.............. 13

    III.  Any Remedy Should Be Limited to Relief for Washington Only..................................... 17

CONCLUSION................................................................................................................... 19

DEFENDANTS' REPLY IN SUPPORT OF CROSS
MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

**INTRODUCTION**

Washington fails to show this Court has jurisdiction over its APA, constitutional, or *ultra vires* claims, or that any of its claims have merit. As to jurisdiction, the Supreme Court has twice recognized in nearly identical cases that the Court of Federal Claims has exclusive jurisdiction over such claims. *Nat'l Insts. of Health v. Am. Public Health Assoc.*, 145 S. Ct. 2658 (2025) ("*NIH*"); *Dep't of Edu. v. California*, 145 S. Ct. 966 (2025) ("*California*"). The Ninth Circuit, following this authority, stayed injunctive relief in another similar grant termination case because the relief sought was "designed to enforce an obligation to pay money pursuant to the grants," and the government made a "strong showing" that the "district court lacks jurisdiction" to order that relief. *Thakur v. Trump*, 163 F.4th 1198, 1204 (9th Cir. 2025) (cleaned up).

Washington tries to distinguish these cases by arguing that it challenges the termination of a "program" and a "policy" not the termination of its SSP grant. But this assertion does not distinguish the case. In *California*, the plaintiffs challenged an agency decision to terminate all grants under two congressionally mandated programs, and in *NIH*, the plaintiffs challenged agency decisions to terminate grants in response to "DEI" policy guidance. And in both *California* and *NIH*, the Supreme Court still concluded that the plaintiffs' claims were "based on grants," sought to "enforce an obligation to pay money," and could not be brought in district court under the APA. So too here. Washington may artfully frame this litigation as a challenge to an "SSP Termination Policy" under the APA, the Constitution, and *ultra vires* theories, but it cannot hide the relief it seeks: an order resulting in the reinstatement of its SSP grant, and FEMA's specific performance under that grant. *See* Pl.'s Opp. to Cross Mot. for Summ. J., ECF No. 28 ("Pl. Opp."), at 19 (describing its relief as "return[ing] the world to the status quo" pre-termination). The Court lacks jurisdiction to order that contractual relief.

Jurisdiction aside, Washington fails to show that the termination of the SSP grant program was "arbitrary and capricious" under the APA. Defendants terminated the grants under

DEFENDANTS' REPLY IN SUPPORT OF CROSS
MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

2 C.F.R. § 200.340(a)(2) (2020)[1] because they concluded that providing non-federal entities, like Washington, with millions of dollars to support the shelter, medical, educational, and hygiene needs of non-citizens released from DHS custody did not support the Administration's policy goal of enforcing immigration laws and deterring unlawful immigration.  That decision was not "contrived" or "implausible" or even focused only on "sanctuary jurisdictions," as Washington argues, *see* Pl. Opp. at 9, but reasonable and reasonably explained in multiple memoranda and in the termination letter itself.  *See, e.g.*, ECF No. 18-11 at FEMA_AR_000185 ("Termination Letter"); ECF No. 18-7 at FEMA_AR_000175 ("Jan. 28, 2025 Noem Memo.").  Nor was that decision "contrary to law" under the APA.  Congress appropriated $650 million to FEMA to fund "sheltering and related activities" to alleviate overcrowding in CBP short-term holding facilities.  Pub. L. No. 118-47, 138 Stat. at 598 ("The 2024 DHS Appropriations Act").  Nothing in that law requires FEMA to administer a grant program or otherwise fund direct services to non-citizen migrants released from DHS custody.  Defendants therefore could not violate that law by terminating grants that funded these services.  Nor was Defendants' decision contrary to 2 C.F.R. § 200.340(a)(2), as the regulation expressly allows the government to terminate a grant when it "no longer effectuates . . . agency priorities."

Washington's *ultra vires* and constitutional theories fail for similar reasons.  Defendants did not "openly flout" a funding command "in excess of its delegated powers" under the 2024 DHS Appropriations Act by terminating the SSP grants.  Pl. Opp. at 14.  Rather, FEMA decided that the SSP grants did not support the agency's immigration enforcement goals and thus exercised its right under the grants to terminate them.  Doing so did not (and could not) violate any separation of powers doctrine.  Nor could such termination violate the Spending Clause, as it did not create an unconstitutional condition on the receipt of government funding; the termination just ended the parties' contractual relationship pursuant to its terms.

---

[1] All citations to 2 C.F.R. § 200.340 are to the 2020 version effective at the time the parties executed the SSP grant.

DEFENDANTS' REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

For these reasons, Washington's motion on all claims should be denied, and Defendants' cross motion should be granted.

**ARGUMENT**

**I.      The Court Lacks Jurisdiction Over All Washington's Claims.**

This Court lacks jurisdiction.  Washington's claims, though asserted under the APA, the Constitution, and an *ultra vires* theory, are all based on the termination of its SSP grant.  And the relief Plaintiff seeks is designed to enforce FEMA's continued payment of funds under that grant. The Supreme Court and the Ninth Circuit—in cases just like this one—determined that the APA "does not provide" federal district courts with jurisdiction (1) "to adjudicate claims 'based on' . . . grants" or (2) "to order relief designed to enforce any 'obligation to pay money' pursuant to those grants."  *NIH*, 145 S. Ct. at 2658 (quoting *California*, 604 U.S. at 651); *see also Thakur v. Trump*, 163 F.4th at 1204.  Washington's attempt to distinguish and downplay this authority fails.

Washington argues that, regardless of *NIH*, *California*, and *Thakur*, a challenge to Defendants' "program" termination decision—unlike a challenge to an "individualized" grant termination—belongs in this Court under the APA.  Pl. Opp. at 1–3.  But plaintiffs (including Washington) unsuccessfully argued the same in *California*.  There, the Department of Education terminated all grants under two congressionally mandated grant programs without making any individualized grant assessments beforehand.  *See California v. U.S. Dep't of Educ.*, 769 F. Supp. 3d 72, 75 (D. Mass. 2025) ("The record reflects that there was no individualized analysis of any of the programs; rather, it appears that *all* TQP and SEED grants were simply terminated.") (emphasis in original).[2]  And, as here, the plaintiffs framed their claims as challenges to the agency's "programmatic decision" under the APA based on "statutes and regulations, not

---

[2] *See also* States' Stay Opposition at 4–5, 8–9, *California*, 604 U.S. 650 (24A910) ("*California* Opp.") (describing termination of grant programs under 20 U.S.C. §§ 1022 and 6672(a)).  The parties' Supreme Court briefs in *California* are available at https://www.supremecourt.gov/docket/docketfiles/html/public/24a910.html.

3

DEFENDANTS' REPLY IN SUPPORT OF CROSS
MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

contracts" and sought "equitable relief," not money damages. *California* Opp. at 22, 25. Nonetheless, the Supreme Court stayed the district court's order temporarily enjoining the agency from terminating the grants, holding that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered here." *California*, 604 U.S. at 651 (citation omitted). Thus, even though Defendants terminated all grants issued under a single program, that matters not for purposes of jurisdiction: challenges to federal grant terminations, regardless of their programmatic ties, belong in the Court of Federal Claims under the Tucker Act. *Id.*

Defendants' termination of grants in response to a "top-down policy," Pl. Opp. at 3, likewise does not create jurisdiction in this Court. In *NIH*, the agency terminated over 800 grants issued to 16 plaintiff-states, in response to the Administration's policy goal of eliminating support for "DEI." *See* States' Stay Opposition at 6–11, *NIH*, 145 S. Ct. 2658 (25A103) (describing 800-plus grants terminated based on the agency's "DEI" policy objectives).[3] Those plaintiffs similarly brought APA, constitutional, and *ultra vires* claims against the agency—all claims challenging (1) NIH guidance directing the review of grants supporting "DEI"; and (2) NIH's termination of grants based on that guidance. *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring). The district court vacated the guidance and the terminations. *Massachusetts v. Kennedy*, No. 1:25-CV-10814, 2025 WL 1747213, at *2 (D. Mass. June 23, 2025). Although the Supreme Court did not stay the vacatur of the policy guidance itself, it did stay the vacatur of the *terminations* based on that guidance, holding (again) that the APA "does not provide [district courts] with jurisdiction to adjudicate claims based on [federal] grants or to order relief designed to enforce any obligation to pay money pursuant to those grants." *NIH*, 145 S. Ct. at 2559 (citation and quotations omitted). Justice Barrett also underscored that "plaintiffs cannot end-run [CFC's exclusive jurisdiction over grant terminations] simply by packaging them with a

---

[3] The parties' Supreme Court briefs in *NIH* are available at https://www.supremecourt.gov/docket/docketfiles/html/public/25a103.html.

4

DEFENDANTS' REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

challenge to agency guidance." *NIH*, 145 S. Ct. at 2661–62 (Barrett, J. concurring) (quoting *California*, 604 U.S. at 651).  Washington's attempt to do so here should be rejected.  Defendants terminated grants pursuant to their terms, including 2 C.F.R. § 200.340(a)(2), following the issuance of agency guidance and policy goals related to deterring illegal immigration.  *See* Termination Notice at FEMA_AR_000185–86; Jan. 28, 2025 Noem Memo at FEMA_AR_000175.  The Court of Federal Claims, not this Court, has jurisdiction to decide whether the SSP grant permitted that termination.

Washington also fails to distinguish this case from *Thakur*.  *See* Pl. Opp. at 5.  There, like here, the researcher-plaintiffs did "not rely on the terms of the [federal grant] agreements to support their claims," and they "exclusively [sought] injunctive and declaratory relief," rather than "money damages."  *Thakur v. Trump*, 787 F. Supp. 3d 955, 990 (N.D. Cal. 2025).  The district court granted their request for a preliminary injunction.  *Id.*  But the Ninth Circuit reversed, concluding, "We are bound by *NIH*."  The Ninth Circuit held that plaintiffs' APA claims were "disguised contract claims" because they "challenge[d] the government's termination of research grants," and the relief sought (and ordered) was the "vacatur of the termination notices and reinstatement of the terminated grants."  *Thakur*, 163 F.4th at 1204.  Washington makes nearly identical attempts to avoid the Tucker Act here, Pl. Opp. at 3–6, but ultimately asserts the same APA claims and seeks the same relief as the *Thakur* plaintiffs.  The "APA's limited waiver of sovereign immunity [does] 'not provide the District Court with jurisdiction'" over this case.  *Thakur*, 163 F.4th at 1204 (quoting *NIH*, 145 S. Ct. at 2559).

Washington argues that *Washington v. U.S. Department of Education*, 161 F.4th 1136 (9th Cir. 2025) ("*Wash. v. DOE*") supports jurisdiction.  Pl. Opp at 4–5.  It does not.  In that case, unlike here, no grants were terminated; instead, on April 29, 2025, the Department of Education notified grantees that grant funding for the following year would not be renewed, with an effective future date of December 31, 2025.  *Washington v. U.S. Dep't of Educ.*, 807 F. Supp. 3d 1275, 1283 (W.D. Wash. 2025).  The district court preliminarily enjoined and vacated the

DEFENDANTS' REPLY IN SUPPORT OF CROSS
MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

discontinuation decisions. *Id.* at 1294. The Ninth Circuit declined to stay that order, concluding that the Tucker Act likely did not apply because vacating the notices would "not cause any grant to be renewed," and "funding to grantees during this calendar year is not at issue . . . and has not been cut off or disturbed." *Wash. v. DOE*, 161 F.4th at 1139–40. That is not the case here.

Unlike the vacatur in *Wash. v. DOE*, the vacatur Washington seeks here would require reinstatement of its grant and would require FEMA to pay out on that grant in the immediate term. Washington asks to vacate and enjoin the Termination Letter (or, as Washington refers to it, the "SSP Termination Policy"). *See* ECF No. 20-1, Proposed Order at 2. And Washington then seeks to use that vacatur to require FEMA to reimburse all costs for "allowable activities." Pl. Mot. at 15. But allowable activities are simply those permitted by the grant. *See* ECF No. 18-2 ("NOFO") at FEMA_AR_000065–75 (describing reimbursement process for "allowable activities"); ECF No. 18-6 ("Award Letter") at FEMA_AR_000121 (awarding $4,039,516 in SSP funds in exchange for completing allowable activities in the approved proposed budget and work plan). An order requiring FEMA to reimburse allowable activities is thus indistinguishable from one requiring FEMA to specifically perform its payment obligations under the grant. Def. Mot. at 13. That FEMA must first approve reimbursement requests, as part of that specific performance, *see* Pl. Opp. at 4–5, does not make Washington's requested relief any less contractual or otherwise distinguish Washington's SSP grant from the grants in *California*, *NIH*, and *Thakur*. In all those cases, as here, the plaintiffs' requested relief was still "designed to enforce" the government's purported and ongoing "'obligation to pay money' pursuant to [its] grant[]." *NIH*, 145 S. Ct. at 2658 (quoting *California*, 604 U.S. at 651); *Thakur*, 163 F.4th at 1204.[4] This Court does not have jurisdiction to order that relief.

---

[4] *See NIH*, 145 S. Ct. at 2664 (Gorsuch, J., concurring) ("An order vacating the government's decision to terminate grants under the APA is in every meaningful sense an order requiring the government to pay those grants."); *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 647 (9th Cir. 1998) ("[Plaintiff] seeks specific performance of the contract. The conclusion follows that these claims are contractually-based."); *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) (recognizing that the Tucker Act applies if the relief sought is

6

DEFENDANTS' REPLY IN SUPPORT OF CROSS
MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

Washington's reliance on *Martin Luther King, Jr. County v. Turner*, 785 F. Supp. 3d 863, 874 (W.D. Wash. 2025) ("*King County*") is also misplaced. Pl. Opp. at 4. There, starting in March 2025, two federal agencies imposed new conditions on grantees' receipt of federal funds. *King County*, 785 F. Supp. 3d at 874–75. The conditions required the grantees to take affirmative steps to receive funding, such as assisting ICE with the enforcement of immigration laws or ensuring that no funds would go to abortion-related services. *Id.* The plaintiff-grantees sought preliminary relief, which this Court granted. *Id.* at 893. The Court's order enjoined the government from imposing the conditions; the order did not result in the reinstatement of previously terminated grants. *Id.* The relief requested here, however, would require the reinstatement of Washington's grant and the government's continued performance. *See* Proposed Order at 2 (seeking vacatur of "SSP Termination Policy, including any and all decisions made or actions taken pursuant to the SSP Termination Policy"); Pl. Opp. at 19 (describing the relief it seeks as "return[ing] the world to the status quo" pre-termination). As made clear by the Ninth Circuit six months after *King County*, this Court lacks jurisdiction to order that relief. *Thakur*, 163 F.4th at 1204.[5]

Finally, Washington remarkably asserts that Defendants "do not appear to argue" that the Tucker Act precludes jurisdiction over its constitutional and *ultra vires* claims. Pl. Opp. at 2, n.1. Not so. At every turn, Defendants have maintained that the Court lacks jurisdiction over *all* Washington's claims, because they are *all* disguised contract claims that belong in the Court of Federal Claims under the Tucker Act. *See, e.g.*, Defs. Cross-Mot. for S.J. and Opp. to Pl.'s Mot. for S.J., ECF No. 24 ("Defs. Mot."), at 1 ("Washington may not evade this jurisdictional and

---

"akin to the traditional remedies available for breach of contract (damages or *specific performance*)") (emphasis added).

[5] The government appealed the decision in *King County*, arguing that the challenged funding conditions are authorized by statute, and the factors weigh against injunctive relief. *See* Brief for Appellants, ECF No. 11.1, *County of King v. Turner*, No. 25-3664 (9th Cir.). The appeal remains pending.

7

DEFENDANTS' REPLY IN SUPPORT OF CROSS
MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

remedial limit . . . by framing its claims as standalone constitutional claims or *ultra vires* claims. All these counts challenge the same action … and all seek the same relief ….”); *id.* at 9 (“Washington does not identify an unequivocal and express waiver of sovereign immunity for its claims.  Nor could it do so.”).  Rather than expose any deficiency in Defendants’ briefing, this footnote only underscores Washington’s failure to identify an unequivocal and express waiver of sovereign immunity for its constitutional and *ultra vires* claims; the APA does not provide such a waiver, *see id.* 8–16, and Washington makes no showing that some other source of law does so. *See Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1101 (9th Cir. 2016) (“Plaintiffs have the burden of meeting this high standard—such a waiver must be ‘unequivocally expressed’ in the statutory text.”).  Defendants’ cross motion should be granted, as the Court lacks jurisdiction over all Washington’s claims.

## II.   Washington’s Claims Fail on the Merits.

### A.   Washington’s APA Claims Fail as a Matter of Law.

As previously demonstrated, *see* Defs. Mot. at 17–23, Defendants’ decision to terminate SSP grants was neither arbitrary or capricious (Count III) nor contrary to law (Count IV).  None of the arguments in Washington’s opposition alter this conclusion.

#### 1.   Defendants’ Termination Decision was Not Arbitrary and Capricious.

At its core, Defendants’ decision to terminate SSP grants was reasonable—and reasonably explained—by its assessment that providing millions of dollars to support noncitizen migrants with shelter, food, medical care, and personal products would not serve DHS’s priority of deterring unauthorized immigration and may instead encourage people to cross the border illegally.  Defs. Mot. at 17–21; Termination Letter at FEMA_AR_000185.  The law does not require more.

Washington urges the Court to resist this common-sense conclusion by considering extraneous “context” that when “properly understood” purportedly shows that DHS’s decision was “contrived” and a “post hoc rationalization[].”  Pl. Opp. at 5–6.  But this “context” simply

DEFENDANTS’ REPLY IN SUPPORT OF CROSS
MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

consists of rehashing Washington's previous assertions as to why it disagrees with DHS's policy decision. *Id.* at 7. It is black letter law that it is not the job of Washington (or this Court) to second guess the policy decisions of DHS and substitute its judgment for that of the agency. *See, e.g., Bos. Redevelopment Auth. v. Nat'l Park Serv.*, 838 F.3d 42, 47 (1st Cir. 2016) (even if it disagrees with an agency's conclusions, a court "'cannot substitute its judgment for that of the agency'"); Defs. Mot. at 18–19 (collecting additional authority).

Likewise, Washington's attempt to focus on isolated statements that differ from the reasonable explanation provided in the Administrative Record (*see* Pl. Opp. at 7–8) are unavailing. *See Am. Legion v. Derwinski*, 54 F.3d 789, 798 (D.C. Cir. 1995) ("[E]ven if some of the agency's remarks might appear erroneous when read in isolation, the court will uphold agency action that, considered in its entirety, is based on appropriate considerations and otherwise complies with relevant statutes and the [APA].") (alteration and quotations omitted).

To the extent that Plaintiff contends that Defendants' explanation is an impermissible post hoc rationalization, Pl. Opp. at 17, that argument is also without merit. Defendants described the rationale and legal authority for their decision to terminate the grants in the same letter that executed the terminations (as well as elsewhere in the Administrative Record). *See, e.g.,* Termination Letter at FEMA_AR_000185. Thus, it is chronologically impossible for FEMA's contemporaneous explanation to have been "post hoc." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 23 (2020) (the rule against post hoc decision-making applies to "post hoc justifications [that] are raised in court by those appearing on behalf of the agency or by agency officials themselves," not situations in which there are "contemporaneous explanations").

Washington next contends that the Termination Letter is arbitrary and capricious because it "contains no reasoning." Pl. Opp. at 9. Once again, Washington reaches this result by ignoring the plain language of the Termination Letter and substituting its own policy views as "context." But the Administrative Record is clear. Defendants terminated the grants for the following reasons:

9

DEFENDANTS' REPLY IN SUPPORT OF CROSS
MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

> The previous agency priorities under the FY's 2023 and 2024 SSP were to provide funding to non-federal entities to provide shelter, food, transportation, acute medical care, and personal hygiene supplies for individuals released from DHS short-term holding facilities. The individuals receiving these services often have no legal status and are in the United States unlawfully, such as those awaiting removal proceedings. This, in turn, provides support for illegal aliens and is not consistent with DHS's current priorities. For these reasons, DHS/FEMA is terminating your awards.

*Id.* This explanation more than meets the standard that there be, at a minimum, "a rational connection between the facts found and the choice made." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.,* 419 U.S. 281, 285 (1974) (citation omitted).

Finally, Defendants adequately considered reliance interests in light of the broad language authorizing termination, *i.e.* "if an award no longer effectuates . . . agency priorities." 2 C.F.R. § 200.340(a)(2). Washington contends that DHS failed to consider that termination would limit federal funding for Washington "to offset the costs it incurred providing for its new, noncitizen migrant residents." Pl. Opp. at 11. However, the record demonstrates that Defendants did, indeed, consider that grants in question "were to provide funding to non-federal entities to provide shelter, food, transportation, acute medical care, and personal hygiene supplies for individuals released from DHS short-term holding facilities." Termination Letter at FEMA_AR_000185. It simply reached a different conclusion than Washington would prefer. As the Administrative Record makes clear, Defendants determined "grant programs that support, or have the potential to support, illegal immigration through funding illegal activities or support for illegal aliens" were not consistent with the Administration's current priorities. *Id.* Thus, the government fulfilled the requirements that it "assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *Regents of the Univ. of Cal.*, 591 U.S. at 33. That is all the APA requires. *Id.*

### 2. Defendants' Termination Decision Was Not Contrary to Law.

Defendants' decision to termination the SSP grants was not "contrary to law" under the APA. As noted above, the 2024 DHS Appropriations Act appropriated $650 million to FEMA to

DEFENDANTS' REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

fund "sheltering and related activities" to alleviate overcrowding in CBP short-term holding facilities. But nothing in the Appropriations Act requires FEMA to administer a grant program or otherwise fund direct services to non-citizen migrants released from DHS custody. As a result, Defendants could not violate that law by terminating grants that funded these services. Nor was Defendants' decision contrary to 2 C.F.R. § 200.340(a)(2), as that regulation expressly allows the government to terminate a grant when it "no longer effectuates . . . agency priorities."

Washington's arguments in response are unavailing. First, Washington attempts to demonstrate that, as a threshold matter, it "falls within the 'zone of interests' sought to be protected by the statutory provision" at issue in order to bring a private right of action for violation of the statute. *Air Courier Conf. of Am. v. Am. Postal Workers Union*, 498 U.S. 517, 523 (1991). In particular, Washington contends that it is entitled to bring a private right of action because the 2024 DHS Appropriations Act mentions "non-federal entities" in appropriating money to FEMA to fund "sheltering and related activities." Pl. Opp. at 12–13. But, as previously explained, that Act regulates and protects the interests of DHS and Congress in the federal spending and appropriations process. The Act did not require Defendants to make SSP grants at all, let alone prohibit the government from later terminating the grants if its priorities change. Thus, nothing in the text or context of the act suggests an intention to provide a private right of action to state government grantees who assert harm by discretionary federal spending decisions with its mere reference to non-federal entities. *See*, *e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (citation omitted) (noting that the zone of interest test "asks whether 'this particular class of persons ha[s] a right to sue under this substantive statute'" and "is therefore an appropriate tool for determining who may invoke the cause of action[]"). Instead, because the Act only governs the relationship between the Executive and Congress regarding federal spending, it does not confer judicially cognizable rights on state governments as potential grantees to second-guess federal spending decisions.

11

DEFENDANTS' REPLY IN SUPPORT OF CROSS
MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

Moreover, even if Washington was within the zone of interests to bring its claims, Defendants' decision to terminate SSP grants was not contrary to law.  As explained above, 2 C.F.R § 200.340(a)(2), which is incorporated into the grants, *see* Award Letter at FEMA_AR_000161, plainly permits DHS to terminate awards that "no longer effectuate . . . agency priorities."  Washington attempts to avoid this result by grafting two additional requirements that are inconsistent with this plain language.  First, Washington contends that § 200.340(a)(2) limits any terminations to those "authorized by law."  Pl. Opp. at 13.  Then, in somewhat circular fashion, Washington asserts that Defendants violated this command.  But once again, the 2024 DHS Appropriations Act does not mandate DHS or FEMA to make SSP grants at all, let alone limit the otherwise legitimate bases for terminating the grants.  Similarly, Washington contends that the Court should read into the statute a "common sense" limitation that only permits terminations based on considerations or agencies priorities at the time the grant was awarded.  But far from being "common sense," this requirement, which has no anchor in the text of the statute, would prohibit any Administration from changing the priorities of the prior Administration.  That is not only inconsistent with the plain text of the statute, but also contrary to the well-settled law that "it is not for [the court] to 'second-guess'" what the agency chooses to prioritize.  *Env't Def. Fund v. EPA*, 922 F.3d 446, 457 (D.C. Cir. 2019) (quoting *WildEarth Guardians v. EPA*, 751 F.3d 649, 656 (D.C. Cir. 2014)).  For all of these reasons, Washington's arguments should be rejected.

## B.    Defendants' Termination of Grants Was Not *Ultra Vires*.

Washington's *ultra vires* claim (Count V) also fails.  Washington briefly asserts that Defendants' termination of the SSP grant program was an impermissible *ultra vires* action.  *See* Pl. Opp. at 14–15.  But Washington does not even attempt to counter Defendants' previous demonstration that the *ultra vires* exception to sovereign immunity does not extend to claims like these premised on a contract dispute.  *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 693–95 (1949); Defs. Mot. at 23–24.  Nor can Washington effectively counter the Supreme

12

DEFENDANTS' REPLY IN SUPPORT OF CROSS
MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

Court's command that *ultra vires* review is "strictly limited" in order to prevent an "end-run around the limitations of . . . judicial review statutes." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025). Here, the applicable statutory schemes provide Washington "with a meaningful and adequate opportunity for judicial review," *Nuclear Regul. Comm'n*, 605 U.S. at 681 (quoting *Bd. of Governors, FRS v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991), and thus an *ultra vires* claim is not available. *See* Defs. Mot. at 24 (collecting authority).

### C.   Defendants Did Not Violate the Constitution by Terminating SSP Grants.

The Court should also grant Defendants' cross motion for summary judgment on Washington's constitutional separation-of-powers (Count I) and Spending Clause (Count II) claims. Washington's separation of powers claim is a mere regurgitation of its statutory claims, which cannot survive under the Supreme Court's holding in *Dalton v. Specter*, 511 U.S. 462 (1994). The claim also fails on the merits because FEMA's decision to terminate the grants was consistent with authority provided by Congress and by regulation. Similarly, as to the Spending Clause claim, terminating the SSP grants was merely the exercise of terms of the grant known to all parties from the outset, and thus did not create an unconstitutional condition on the receipt of government funding.

### 1.   *Washington's Separation of Powers Claim Fails.*

In their cross motion, Defendants explain that Washington's separation of powers claim (Count I) fails because the Supreme Court in *Dalton v. Specter*, 511 U.S. 462 (1994), explicitly rejected the idea that claims that the executive branch exceeded statutory authority can be duplicated as constitutional claims that there has been a violation of the separation of powers. Defs. Mot. at 25–26.

In its opposition, Washington suggests that the Ninth Circuit has taken a different approach to *Dalton* because constitutional claims were considered in two cases, *Sierra Club v. Trump*, 929 F.3d 670 (9th Cir. 2019), and *Murphy Co. v. Biden*, 65 F.4th 1122 (9th Cir. 2022). Pl. Opp. at 15–16. While each of these cases permitted constitutional claims to go forward, both

DEFENDANTS' REPLY IN SUPPORT OF CROSS
MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

acknowledged a distinction between "statutory authority" claims and claims with identifiable issues of "background constitutional authority." *See Sierra Club*, 929 F.3d at 696; *Murphy*, 65 F.4th 1130.

Under *Dalton*, "in cases in which the [executive branch] concedes . . . that the only source of authority is statutory, no 'constitutional question whatever' is raised." *Id.* at 473, n.6. Accordingly, viable constitutional claims must go beyond the basic, broad assertion that any executive act in excess of statutory authority amounts to a constitutional violation because the executive's source of authority is statutory. Instead, even in the Ninth Circuit, constitutional claims must provide "specific allegations," that is, allegations that the specific conduct of the executive would violate a specific constitutional right. *Murphy*, 65 F.4th at 1130. In *Sierra Club*, for example, the statutory question was whether the Secretary had authority under a particular statute to "reprogram" funds from the Department of Defense to create a border wall that Congress had refused to fund in the DHS budget. Thus, if the statute at issue did not provide authority for such transfer, then transferring of those funds from one department to another would have amounted to re-appropriating funds and created a direct conflict with Congress's appropriations power.

Here, Washington does not describe specific allegations explaining how the termination of its SSP award would violate the Constitution but instead takes a scattershot approach—cursorily listing the Appropriations Clause, Spending Clause, Take Care Clause, and Congress' legislative power in its complaint, *see* ECF No. 15, Amend. Compl. ¶¶ 106–08, while failing to connect the dots as to how the termination creates a distinct constitutional issue. The only specific allegation Washington makes in its separation of powers Count is that the Administration "ignored Congress' clear funding command," Pl. Opp. at 16, perhaps hinting at a conflict with Congress' appropriations power. But refraining from spending allocated funds has "nothing to do with the prohibitions on unauthorized spending imposed by the Appropriations Clause." *Sierra Club*, 929 F.3d at 697, n.21. In *Sierra Club*, the Ninth Circuit explicitly distinguished

14

DEFENDANTS' REPLY IN SUPPORT OF CROSS
MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

between cases where "the Executive Branch was spending money Congress had never appropriated," which raised a constitutional Appropriations Clause question, and cases where "the Executive Branch was refusing to allot money Congress had specifically instructed it to spend," which presented "no constitutional claim at issue." *Id.* Accordingly, under the Ninth Circuit's reading of *Dalton*, Washington's Count I fails.

Even if Washington's separation of powers could be considered on the merits, the termination of Washington's SSP award pursuant to its terms does not violate the Constitution. As noted in Defendants' cross motion, Congress appropriated funds in the 2024 DHS Appropriations Act for sheltering and related activities generally, but did not bind the agency to the SSP specifically, let alone to any specific SSP grant recipient like Washington here. *See* Defs. Mot. at 17, 26. Congress also would have been aware of the provision in the Uniform Administrative Requirements ("UAR") that gives the executive branch—and only the executive branch—authority to terminate grants if they no longer effectuate program goals and agency priorities. *See* 2 C.F.R. § 200.340(a)(2).[6] Put simply, Congress' "funding command" was general and thus gave the agency discretion to create a grant program subject to the agency's ability to terminate those grants under 2 C.F.R. § 200.340. Far from ignoring Congress' mandate, Defendants exercised the discretion that Congress provided them under the 2024 DHS Appropriations Act. Defendants therefore did not violate separation of powers principles by terminating the SSP grants pursuant to this properly exercised authority.

### 2. *Washington's Spending Clause Claim Fails.*

Defendants did not violate the Spending Clause by terminating grants under 2 C.F.R. § 200.340(a)(2). The Spending Clause grants Congress the power "to pay the Debts and provide

---

[6] The termination regulation, 2 C.F.R. § 200.340, is part of the UAR, which existed years before Congress passed the 2024 DHS Appropriations Act. *See* 31 U.S.C. § 503(a)(2) (authorizing OMB to establish governmentwide financial policies, including the UAR) (effective Dec. 12, 2017); 2 C.F.R. § 3002.10 (DHS's adoption of UAR "gives regulatory effect to the OMB guidance and supplements the guidance as needed for the Department").

DEFENDANTS' REPLY IN SUPPORT OF CROSS
MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

for the . . . general Welfare of the United States." U.S. Const., Art. I, § 8, cl. 1. This spending power is "subject to several general restrictions": first, its exercise "must be in pursuit of 'the general welfare'"; second, any condition on federal funds must be "unambiguous"; and third, they must be related to "the federal interest in national projects or programs." *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (internal citations omitted); *see Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 576 (2012) ("*NFIB*"). Under Ninth Circuit precedent, "the principles of *Dole* and *NFIB* apply to agency-drawn conditions on grants to states and localities just as they do to conditions Congress directly places on grants." *City of Los Angeles v. Barr*, 929 F.3d 1163, 1176 n.6 (9th Cir. 2019).

Washington does not challenge whether Defendants' decision to terminate SSP grants was in "pursuit of the general welfare" or related to a "federal interest in national projects or programs." *Dole*, 483 U.S. at 207. Rather, Washington argues that Defendants imposed an "ambiguous" condition on the receipt of SSP funds by terminating the grants under 2 C.F.R. § 200.340(a)(2). Pl. Mot. at 26; Pl. Opp. at 17. Not true. Most obviously, terminating a grant does not impose a condition on the receipt of funding or otherwise unlawfully coerce the State to do anything in exchange for funding; it ends the contractual relationship between the parties. *See* Defs. Mot. at 26–28; *Peralta v. Hisp. Bus., Inc.*, 419 F.3d 1064, 1072 (9th Cir. 2005) (recognizing that "a termination [of an insurance policy] is not the equivalent of a change or modification") (citing Black's Law Dictionary (4th ed. 1957) (defining "terminate" as "[t]o put an end to; to make to cease; to end")).[7]

Moreover, FEMA's contractual right to terminate the SSP grants under 2 C.F.R. § 200.340(a)(2) was not "ambiguous." Indeed, Washington acknowledges that this regulation was "incorporated (in very general terms) into the award documents." Pl. Opp. at 17; *see also* NOFO

_____

[7] *Cf. Forge Underwriting Ltd. v. Greenspan*, No. 3:19-CV-810-JR, 2019 WL 7633156, at *20 (D. Or. Dec. 3, 2019) (recognizing that a "condition precedent is '[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises'") (quoting Black's Law Dictionary (11 ed. 2019)).

DEFENDANTS' REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

at FEMA_AR_000021, -33; Award Letter at FEMA_AR_000161–72. Washington therefore knew (or should have known) that FEMA's agreement to reimburse over $4 million in direct services to non-citizen migrants was lawfully subject to, *inter alia*, FEMA's ability to terminate the grant if the agency decided that providing these funds "no longer effectuate[d] . . . the agency's priorities," 2 C.F.R. § 200.340(a)(2)—especially when the 2024 DHS Appropriations Act did not require FEMA to use funding to administer this specific grant program or otherwise require FEMA to fund services for non-citizens released from DHS custody. FEMA's exercise of a contractual right does not (and cannot) support Washington's Spending Clause claim. [8]

### III.    Any Remedy Should Be Limited to Relief for Washington Only.

Even if Washington had jurisdiction and any meritorious claim, its request for universal remedies should be denied because (1) Washington has not met its burden to obtain a permanent injunction, and (2) the relief is overbroad under *Trump v. CASA, Inc.*, 606 U.S. 831 (2025).

First, in its opening brief, Washington failed to establish (or even mention) all four injunctive relief elements, including "irreparable harm" and the "inadequacy of legal remedies." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) ("The basis of injunctive relief in the federal courts is irreparable harm and inadequacy of legal remedies."). Now, in its reply, Washington argues that two declarations submitted in support of Article III standing also support irreparable harm, and that all other elements are met. Pl. Opp. at 19. They are not. To start, a "district court need not consider arguments raised for the first time in a reply brief," *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007)—especially here, where

---

[8] Washington's reliance on *Washington v. U.S. Department of Commerce*, 812 F. Supp. 3d 1169, 1187 (W.D. Wash. 2025) is misplaced. There, the court held that the agency's termination of two cooperative agreements based on "new priorities," such as "outcome-based projects with clear deliverables," was "impermissibly vague" and thus allowed the Spending Clause claim to survive a motion to dismiss. 812 F. Supp. at 1177, 1187. Here, FEMA's priority to deter illegal immigration by ending funding for services to non-citizen migrants is not vague or otherwise contrary to any Congressional mandate; and Washington has not met its burden at the summary judgment stage that its Spending Clause claim should be granted.

DEFENDANTS' REPLY IN SUPPORT OF CROSS
MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

Washington seeks the "extraordinary remedy" of injunctive relief, which is "never awarded as of right." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 784 (9th Cir. 2019) (citation omitted).  That alone defeats Washington's request for permanent injunctive relief.

But even if the Court considers these new arguments, Washington still fails to meet its burden.  As Washington makes clear, all "downstream" harms arise from the "loss of SSP funds," Pl. Opp. at 19, describing its harm as a "textbook pocketbook injury," Pl. Mot. at 10–11.  "Mere injuries, however substantial, in terms of money, time and energy necessarily expended are not enough." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (citation omitted).  Moreover, Washington fails to show the "inadequacy of legal remedies" for these injuries, as damages stemming from FEMA's termination of the SSP grant can be compensated (if breach is proven) in the Court of Federal Claims.  *See supra* at 3–8.  And, even if this Court concludes that it has jurisdiction, Washington's loss of funds could be remedied by vacatur alone, without any need for injunctive relief.

Second, any universal relief should be denied.  Washington no longer seeks a universal injunction applicable to all SSP grantees.  *See* Pl. Opp. at 18 (stating that it "does not ask the Court to enjoin Defendants from implementing the SSP Termination Policy against any entity except the State of Washington").  This new position makes sense, as any universal injunction would contravene *CASA*, which limits a court's equitable authority to "administer[ing] complete relief *between the parties*" and prohibits relief barring defendants from enforcing "a law or policy against *anyone*."  *Id.* at 837, 851 (emphasis in original).

Based on the principles in *CASA*, the Court also lacks authority to order a universal vacatur of the so-called "SSP Termination Policy" under 5 U.S.C. § 706(2).  Pl. Opp. at 18.  Any such vacatur would be the same as a universal injunction.  *See* Pl. Opp. at 19 (describing its requested vacatur as "return[ing] the world to the status quo" before Defendants terminated the SSP grants).  And it would be both impractical and nearly impossible for this Court to reinstate all terminated SSP grants, as some grantees are engaged in separate litigation against

18

DEFENDANTS' REPLY IN SUPPORT OF CROSS
MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

Defendants,[9] while others are in various stages of the grant closeout process.  But, even more than that, this relief is not narrowly tailored "to remedy the specific harm alleged," *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012), or otherwise necessary to provide "complete relief" to Washington, *CASA*, 606 U.S. at 851–852.  Vacating the termination of a grant issued to a Texas grantee, for example, would provide no relief, much less "complete relief," to Washington.  The Court therefore should deny any universal request, limiting vacatur under 5 U.S.C. § 706(2) to set aside only the termination of Washington's SSP grant, and remand the case to FEMA to issue a new decision with respect to that grant only.

## CONCLUSION

Defendants respectfully request that the Court deny Washington's Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgment.

Dated: April 28, 2026

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

KIRK T. MANHARDT
Director

KEVIN P. VANLANDINGHAM
Assistant Director

---

[9] In the *City of Chicago* v. *U.S. Department of Homeland Security*, three SSP grantees filed an APA suit challenging the termination of the SSP.  No. 25 C 5463, 2025 WL 3043528, at *1 (N.D. Ill. Oct. 31, 2025).  The court granted preliminary relief ("PI Order"), requiring FEMA to approve valid pre-termination reimbursement requests, but the court did not reinstate the grants, as doing so would contravene "the Supreme Court's recent emergency orders [in *NIH* and *California*]." *Id.* at *11.  The parties continue to litigate the scope of the partial relief granted, with argument set for April 27, 2026.  The PI Order does not apply here, as Washington has no outstanding requests for reimbursement. *See, e.g.*, Amend. Compl. ¶ 100 ("When Defendants terminated the [SSP] . . . Washington had not yet requested reimbursement for any such [reimbursable] expenses.").  In *City of New York v. Trump*, one SSP grantee (NYC) filed an APA suit challenging the pause of SSP funding and the termination of its grant.  No. 1:25-cv-01510-JHR (S.D.N.Y. filed Feb. 21, 2025).  The government's motion to dismiss the second amended complaint is fully briefed and remains pending.

19

DEFENDANTS' REPLY IN SUPPORT OF CROSS
MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR

**U.S. Department of Justice**
Civil Division, Commercial Litigation Branch
1100 L Street NW
Washington, DC 20005
(202) 598-7521

/s/    *Tiffiney F. Carney*
TIFFINEY F. CARNEY
MICHAEL TYE
Trial Attorneys
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
Washington, DC 20005
(202) 598-7521
tiffiney.carney@usdoj.gov
michael.tye@usdoj.gov

*Attorneys for Federal Defendants*

20

DEFENDANTS' REPLY IN SUPPORT OF CROSS
MOTION FOR SUMMARY JUDGMENT
No. 2:25-cv-01401-BJR